UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER SCOTT HINCKA,<br><br>    Defendant. | Case No. 19-20482<br>Honorable Laurie J. Michelson |

**ORDER DENYING DEFENDANT'S MOTION FOR IMMEDIATE TRANSFER [49]**

Christopher Hincka seeks a writ of habeas corpus under 28 U.S.C. § 2241 to end his federal prison term and be immediately released to a Residential Reentry Center. But he has failed to exhaust his administrative remedies and is not entitled to such release in any event. Thus, his motion is DENIED.

**I.**

Following the execution of a search warrant at the Flint home where Christopher Hincka had been residing, officers recovered large amounts of cash, drug paraphernalia, and methamphetamine that Hincka intended to distribute. (ECF No. 27, PageID.70.) At the time, Hincka was on probation in two separate state cases. (Presentence Investigative Report, ¶ 11). The state court found that Hincka violated his probation and sentenced him to 17 months to 10 years on one case and 40 months to 15 years on the other. (ECF No. 47, PageID.346 (citing PSR, ¶¶ 34, 36).)

Hincka was also charged in a federal-court indictment (ECF No. 13) and ultimately pled guilty on July 20, 2021, to possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841 (ECF No. 27). As part of the plea deal, the government agreed to "recommend that the sentence in this case should be concurrent to the two probation violation sentences in Genesee County Circuit Court." (*Id.* at PageID.72.) Hincka's sentencing guidelines range was 120 to 150 months. He was sentenced on October 20, 2020, to the mandatory minimum of 120 months' imprisonment. (ECF No. 31.) The Court ordered the federal sentence to run "concurrent to the probation violation sentences in Genesee County Circuit Court cases 17-041956-FH and 17-042332-FH." (*Id.* at PageID.108.)

At that time, Hincka was in the primary jurisdiction of the federal court. Thus, he began serving his federal (and concurrent state) sentence in the Bureau of Prisons. Once he finishes his 10-year federal sentence, however, he may face additional time in state custody on his parole violation sentences, one of which carries a maximum of 15 years. In other words, Hincka's maximum state sentence exceeds his federal sentence. Thus, the state of Michigan lodged a detainer with the BOP so that, upon completion of his federal sentence, Hincka would be returned to state custody where he would either complete his state sentences or be paroled following a parole hearing. (ECF No. 41, PageID.331–332.)

This detainer, says Hincka, has precluded him from eligibility for the Residential Drug Abuse Program ("RDAP") under 18 U.S.C. § 3621(b) or for transfer to pre-release custody in a community correctional facility (e.g., in a Residential

2

Reentry Center or half-way house) during the final 12 months of his sentence under the Second Chance Act, 18 U.S.C. § 3624(c)(1). (ECF No. 49, PageID.363, 365, 395 ("He's been advised the detainer will also prevent any halfway house placement.").) Hincka contends that with time credits for participation in RDAP and application of the Second Chance Act, he "would have been eligible for community placement on 12/01/2024. But this was quashed due to said detainer." (*Id.* at PageID.365.)

On January 27, 2025, after attempting informal resolution, Hincka submitted a "request for an administrative remedy" form to the FCI Milan warden asking to have his detainer removed. (ECF No. 51-3.) Hincka argued, "I have been denied eligibility for my Second Chance Act half-way house time and R-DAP [Section] 3621 time credit I would otherwise receive had this detainer not been lodged." (*Id.*) The Warden responded on February 27, 2025, and provided the following information:

> Your best course of action in this situation would be to initiate the IAD (Interstate Agreement on Detainers) process. Please visit the Correctional Systems Department during our open house hours (Wednesdays at 11:00am Fridays at 1:00pm) so we can further discuss your options.

(ECF No. 51-4.) The response also advised Hincka of his appeal options if he was dissatisfied with the response. (*Id.*)

Hincka, however, did not wait for the Warden's response and did not file any appeal. Instead, on February 4, 2025, he submitted a motion under 28 U.S.C. § 2241. (ECF No. 49.) Hincka asks the Court to lift the detainer, order the restoration of his Second Chance Act days, and reinstate his RDAP eligibility to "position[] him for immediate release into community placement (Halfway house)." (*Id.* at PageID.371.)

3

Alternatively, he asks the Court "to issue a non-binding Judicial Recommendation" to the State to lift the detainer "so that an immediate writ from the BOP to the [MDOC] may ensue." (*Id.*)

At the Court's direction, the government filed a response. (ECF No. 52.) The government urges dismissal of the petition for failure to exhaust administrative remedies. (*Id.*) Hincka submitted a reply (ECF No. 53) that largely reiterates the arguments from his main brief. The motion can be decided without further argument. *See* E.D. Mich. LR 7.1(f).

## II.

"In general, a petition for a writ of habeas corpus under § 2241 is reserved for a challenge to the manner in which a sentence is executed, rather than the validity of the sentence itself." *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998). But "[f]ederal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241." *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006). "Complete exhaustion of administrative remedies is a prerequisite to seeking review of the BOP's calculation of sentencing credit." *United States v. Singh*, 52 F. App'x 711, 712 (6th Cir. 2002); *see also United States v. Board*, 747 F. App'x 405, 408 (6th Cir. 2018) ("Miscalculations of jail-time credits must be challenged under 28 U.S.C. § 2241, not § 2255, and only after the prisoner has exhausted his administrative remedies." (citations omitted)). Exhaustion requires submitting a formal request at the institutional level, followed by an appeal to the Regional Office

4

and, if necessary, an appeal to the General Counsel. 28 C.F.R. §§ 542.14(a), 542.15(a), 542.18.

Here, there is no dispute that Hinkca went no further than submitting a request to the Warden. So he has not exhausted his claim.

It is true that "a prisoner's failure to exhaust available state or administrative remedies may be excused where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks." *Fazzini*, 473 F.3d at 232. But Hincka's excuse for not exhausting—that he "aborted his efforts because the date by which he sought relief was fast approaching" (ECF No. 49, PageID.370)—satisfies neither. Nor is it factually accurate. Hincka's projected release date is not until December 20, 2026. (*Id.* at PageID.396); *Find an Inmate*, Fed. Bureau of Prisons, https://perma.cc/4U3F-TQK4.[1]

### III.

Exhaustion aside, Hincka is not entitled to the relief he seeks. Most of his motion is premised on the misunderstanding that he has completed his state sentence. While Hincka is correct to point out that he has already "satisfied his state minimum obligations of 17-months and 40-months" for his parole violation sentences, he is incorrect that "there is no remaining obligation to be served." (ECF No. 49, PageID.364.) There is a difference between his *minimum* sentence and his *maximum* sentence. To further explain:

---

[1] As the government points out, December 1, 2024, was the date on which the BOP calculated Hincka's potential release dates—not his potential release date itself. (ECF No. 52, PageID.431–432 (citing ECF No. 49, PageID.396).)

> Michigan embraces "an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum." A statute sets the maximum sentence, and the trial judge sets the minimum sentence within the sentencing guideline range. A defendant must "serve every day of whatever minimum sentence [is] imposed," but "the parole board retains the discretion to keep a person incarcerated up to the maximum sentence."

*Gary v. Winn*, No. 20-1933, 2021 U.S. App. LEXIS 1286, at *3–4 (6th Cir. Jan. 15, 2021) (alteration in original) (quoting *People v. Drohan*, 715 N.W.2d 778, 789, 791 (Mich. 2006)). Thus, upon completion of his federal sentence, Hincka will need to be sent back to state custody and seen by the parole board for a determination of whether his state sentence will be ended prior to serving the maximum term.

Additionally, the detainer does not appear to be the only reason Hincka has not been transferred to an RRC. Despite Hincka's argument to the contrary (ECF No. 49, PageID.369), the documents attached to his motion show that the BOP did consider the relevant 18 U.S.C. § 3621(b) factors in deciding not to place him in community confinement (ECF No. 49, PageID.392). So the Court sees no basis to recommend that they do so now—especially not before Hincka has made any effort to exhaust this issue.

## IV.

Thus, because Hincka has failed to exhaust his administrative remedies or show any error in the BOP's calculation of his sentence credits, relief under § 2241 is not warranted at this time. Hincka's motion is DENIED.

Dated: March 25, 2025

                                            s/Laurie J. Michelson
                                            LAURIE J. MICHELSON
                                            UNITED STATES DISTRICT JUDGE